Slip Op. 20-95

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES,** | |
| Plaintiff, | |
| v. | |
| **CRUZIN COOLER, LLC,** | **Before: Timothy M. Reif, Judge** |
| **BAD LAMA LLC,** | **Court No. 15-00333** |
| and | |
| **KEVIN BEAL,** | |
| Defendants. | |

### OPINION

[Granting plaintiff's motion for default judgment.]

Dated: <u>July 9, 2020</u>

<u>Nathanial B. Yale</u>, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice of Washington, D.C., for plaintiff United States.  With him on the motion were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Franklin E. White, Jr.</u>, Assistant Director.  Of Counsel was <u>Thomas A. Behe</u>, Senior Attorney, U.S. Customs and Border Protection.

Reif, Judge: The United States of America ("Government" or "plaintiff") brings a motion for a default judgment against Cruzin Cooler, LLC and Bad Lama LLC ("Bad Lama") (together, "defaulted defendants") to recover civil penalties pursuant to 19 U.S.C. § 1592 ("Section 1592").  The Government requests that the United States Court of International Trade ("USCIT" or "CIT"), in accordance with USCIT Rule 55, order Cruzin Cooler, LLC and Bad Lama to pay civil penalties in the amounts of $14,332.64

and $852,088.45, respectively, in addition to post-judgment interest.  *See* Pl.'s Mot. for

Default J., ECF No. 56 ("Pl. Mot.").

On July 24, 2019, the Court entered an order of default against Cruzin Cooler,

LLC and Bad Lama when they failed to "otherwise defend" this action as required by

USCIT Rule 55(a).  *See* Entry of Default, ECF No. 55 ("Entry of Default").  This court

has jurisdiction pursuant to 28 U.S.C. § 1582(1) for the recovery of civil penalties and

duties under Section 1592.

For the reasons set forth below, the court grants plaintiff's motion for a default

judgment and awards the Government the amount of $14,332.64 against Cruzin Cooler,

LLC for the violation of Section 1592 based on gross negligence in respect of three

entries,[1] and awards the Government $852,088.45, against Bad Lama for the violation

of Section 1592 based on fraud in respect of 12 entries.[2]  The Government is also

entitled to post-judgment interest computed in accordance with 28 U.S.C. § 1961, and

costs in accordance with USCIT Rule 55(b).

## BACKGROUND

In December 2008, Cruzin Cooler, LLC started importing Cruzin Coolers and

certain parts.  Compl., ECF No. 3 ("Compl.") ¶ 4.  A finished Cruzin Cooler, LLC product

"resembles a large cooler on wheels . . . ."  Compl. ¶ 4.  Defendant Kevin Beal at all

relevant times was the owner of both Cruzin Cooler, LLC and Bad Lama.  Compl. ¶ 3.

---

[1] Entries 53102681284, 53102682886, and 53102683371.
[2] Entries AJV00157141, UPS54096394, UPS54136000, UPS54136646, UPS54173839, UPS54173946, UPS54180479, UPS80804301, UPS82984036, UPS84687215, UPS91103677, EWM00008050.

Mr. Beal also owned a third company, CSUSA, that imported merchandise similar to

Cruzin Coolers, but which is not a party to this action.  Compl. ¶ 10.

In September 2010, Mr. Beal sought internal advice from U.S. Customs and

Border Protection ("Customs") regarding the classification of fully assembled Cruzin

Coolers[3] after Customs reclassified certain entries of fully assembled Cruzin Coolers

from subheading 8711.90.0000 with a duty-free rate to subheading 8704.90.0000 with a

25 percent duty rate.[4]  Pl. Mot. at 2.  In the same month that Mr. Beal sought internal

advice on the fully assembled Cruzin Coolers, Customs issued an Informed Compliance

Notice to Cruzin Cooler, LLC, in which Customs notified Cruzin Cooler, LLC that it had

been improperly importing certain parts for Cruzin Coolers duty-free.  Compl. ¶ 5.  The

Informed Compliance Notice stated that some parts in the shipments required either a 3

percent or a 10 percent duty rate.  *Id*.  The Informed Compliance Notice explained that

Cruzin Cooler, LLC was importing these parts under the wrong subheading because

under Additional Rule of Interpretation 1(c), parts for Cruzin Coolers can be classified

under the heading for fully assembled Cruzin Coolers only if there is no specific heading

in the U.S. Harmonized Tariff Schedule that covers the parts.  *Id*.  Despite receiving the

Informed Compliance Notice, Cruzin Cooler, LLC continued to import the same parts

---

[3] Entries of fully assembled Cruzin Coolers are not at issue in this action.  Pl. Mot. at 2.
[4] Years later, in May 2013, Customs determined in Ruling HQ H136456 that fully
assembled Cruzin Coolers are imported duty-free under subheading 8711.90.0000 as
an "other cycle."  Pl. Mot. at 2.  Based on the ruling, Customs cancelled its requests for
duties on entries of fully assembled Cruzin Coolers.  *Id*.

under the duty-free heading for entries 53102681284, 53102682886, and 53102683371

("Cruzin Cooler, LLC entries").  Compl. ¶ 6.

In January 2011, Customs sent Cruzin Cooler, LLC a second Informed

Compliance Notice "which contained information on marking and classification issues

with [importations from Cruzin Cooler, LLC]."[5]  Compl. ¶ 10.  In February 2011,

Customs met with Mr. Beal and his attorney in person and told them that the

classification by Cruzin Cooler, LLC of certain imported parts under the duty-free

heading was improper.  Compl. ¶ 10.  That same month, Mr. Beal created Bad Lama,

which took over the importation of the Cruzin Coolers and parts for Cruzin Coolers.

Compl. ¶ 11.  Mr. Beal "provided classification information to [Customs] and handled all

customs-related business on behalf of Bad Lama."  *Id*.

In March 2011, Customs issued Binding Ruling N151635 to Mr. Beal through his

other company, CSUSA.  Compl. ¶ 10.  The Binding Ruling classified the unpowered,

insulated, rectangular, four-wheeled ice chest made of plastic and polystyrene with a

removable top as requiring a 3.2 percent duty rate.  *Id*; Pl. Mot. at Appx154-155.  From

July 2011 through April 2013, Bad Lama continued to import parts under improper

classifications for the following 12 entries: AJV00157141, UPS54096394,

UPS54136000, UPS54136646, UPS54173839, UPS54173946, UPS54180479,

---

[5] Defendants deny receiving the first or second Informed Compliance Notice.  Answer ¶ 5.  However, because defendants are in default, the court accepts as true all well-pled facts in the complaint.  *United States v. Puentes*, 41 CIT__, __, 219 F. Supp. 3d 1352, 1357 (2017) (citations omitted).

UPS80804301, UPS82984036, UPS84687215, UPS91103677, EWM00008050 ("Bad

Lama entries").  Compl. ¶ 13.

Two of the Bad Lama entries, UPS54173946 and UPS84687215, were in direct

violation of Binding Ruling N151635.[6]  Compl. ¶ 15.  The remaining Bad Lama entries

failed to follow Binding Ruling N151635 by misclassifying the four-wheeled ice chest as

"trailers" or "semi-trailers" that needed to be coupled to another vehicle rather than

having the option of pushing or pulling the chest manually, and these Bad Lama entries

also "contained false statements and/or omissions that violated Additional U.S. Rule of

Interpretation 1(c)."[7]  Compl. ¶ 16; *See also* Pl. Mot. at Appx154.

---

[6] In detail, UPS54173946 was merchandise improperly invoiced as other parts of motor cycles with a duty-free rate using subheading 8714.10.0050, instead of scooter wagons with a 3.2 percent duty rate as required by Binding Ruling N151635.  Compl. ¶ 15. Additionally, UPS84687215 was improperly invoiced as non-propelled trailers using 8716.40.0000 with a duty-free rate, instead of scooter wagons with a 3.2 percent duty rate as required by Binding Ruling N151635.  *Id*.

[7] Entries AJV00157141, UPS54136000, UPS54180479 and UPS82984036 were for merchandise invoiced as electric scooter motors.  The four entries were incorrectly designated with a duty-free rate using subheadings 8711.90.0000, 8714.10.0050, and 8716.40.0000.  Compl. ¶ 16.  Customs determined that the parts should have been classified as electric motors under subheading 8501.20.4000 with a 4 percent duty rate or subheading 8501.20.6000 with a 2.4 percent duty rate.  *Id*.  Entry UPS54096394 for merchandise invoiced as "foot pegs, stabilizer brackets left and right, engine control modules, fuel tanks, rim pins, rim hubs, and five hundred-watt motors" was incorrectly entered using subheading 8716.80.5090 with a 3.2 percent duty.  Compl. ¶ 17.  The parts should have been classified for foot pegs, stabilizer brackets left and right, engine control modules, fuel tanks, rim pins, and rim hubs using subheading 8714.99.8000 with a 10 percent duty rate and using subheading 8501.20.4000 with a 4 percent duty rate for 500-watt motors.  *Id*.  Entries UPS54136000, UPS54136646, UPS54173839, UPS54173946, UPS80804301, UPS91103677, and EWM00008050 for merchandise invoiced as spare parts, side bars, controllers, foot tubes, charger ports, handle bars, battery plugs, power cords, electric scooter parts, pull starts, charging ports, brake assemblies, and bearings were incorrectly designated with a duty-free rate using

Additionally, the Bad Lama entries contained false statements on the Customs

7501 forms.  Compl. ¶ 19.  Bad Lama erroneously stated that it was "not related" to the

company that manufactured the goods, when, in fact, Mr. Beal had an ownership

interest in the manufacturing company and an employee of Bad Lama was on the

payroll of the manufacturing company.  *Id.*

Further, during Customs' investigation into Cruzin Cooler, LLC and Bad Lama,

Mr. Beal revealed to Customs that he created Bad Lama to avoid scrutiny by Customs.

Compl. ¶ 12.  Mr. Beal relayed the same message to employees of Cruzin Cooler, LLC

and one of his customs brokers.  *Id.*

On November 25, 2013, Customs issued a pre-penalty notice to Cruzin Cooler,

LLC regarding the Cruzin Cooler, LLC entries.  Compl. ¶ 22.  The pre-penalty notice

identified a culpability level of gross negligence, and, in the alternative, negligence, and

the actual loss of revenue identified was $3,583.16.  *Id.*  Cruzin Cooler, LLC did not

respond, and on January 7, 2014, Customs issued the penalty notice in the amount of

$14,332.64, assessing a penalty for gross negligence, and in the alternative,

negligence.  *Id.*  The amount of $14,332.64, is four times the Government's loss of

---

subheading 8714.10.0050 for motorcycle parts and a 2 percent duty rate using
subheading 8481.80.9020 for controllers.  Compl. ¶ 18.  The parts should have been
classified as the following: the parts or other vehicles using subheading 8716.80.5090
with a 3.2 percent duty rate, for the other parts and accessories of vehicles using
subheading 8714.99.8000 with a 10 percent duty rate, for the bearings using
subheading 8482.10.5064 with a 9 percent duty rate, for the battery plugs using
subheading 8507.90.4000 with a 3.5 percent duty rate, for the power cords using
subheading 8544.42.9000 with a 2.6 percent duty rate, and for the controllers using
subheading 8537.10.9070 with a 2.7 percent duty rate.  *Id.*

revenue, the lesser of the two maximum statutory penalties for gross negligence.  *Id.*

*See also* 19 U.S.C. § 1592(c)(2) (culpability level of gross negligence is punishable by a

civil penalty in an amount not to exceed the lesser of the domestic value of the

merchandise or four times the lawful duties, taxes, and fees deprived by the United

States).  Cruzin Cooler, LLC did not respond to the penalty notice and has not paid the

$14,332.64 penalty.  Compl. ¶ 24.

On December 4, 2013, Customs issued pre-penalty notices to Bad Lama and Mr.

Beal identifying the Government's actual loss of revenue as $16,030.11. [8]  Compl. ¶ 25.

In the pre-penalty notices, Customs identified the culpability level of fraud, with gross

negligence and negligence in the alternative, and a proposed penalty amount of

$852,365.28.[9]  *Id*.  This penalty amount is equal to the domestic value of the Bad Lama

merchandise, the maximum statutory penalty for fraud.  *Id*.  *See also* 19 U.S.C. §

1592(c)(2) (culpability level of fraud is punishable by a civil penalty in an amount not to

exceed the domestic value of the merchandise).

 Bad Lama and Mr. Beal failed to respond to the pre-penalty notices and,

therefore, on January 10, 2014, Customs issued the penalty notices with the same

culpability and penalty amount.  *Id.*  Bad Lama and Mr. Beal did not respond to the

---

[8] The duties (loss of revenue to Customs) attributable to Cruzin Cooler, LLC and Bad Lama identified in the penalty notices are not outstanding because the sureties for Cruzin Cooler, LLC and Bad Lama paid.  Pl. Mot. at 6.
[9] The penalty amount has been adjusted downward from the amount requested in the penalty notice and complaint to reflect certain clerical errors.  Pl. Mot. at 15, n.4.

penalty notices, nor have they made payment on the $852,365.28 penalty.  Compl. ¶

27.

## STANDARD OF REVIEW

Section 1592 governs the assessment of a civil penalty for the fraudulent, grossly

negligent or negligent entry of merchandise into the United States.  19 U.S.C. §

1592.  "[A]ll issues, including the amount of the penalty, shall be tried *de novo*."  19

U.S.C. § 1592(e)(1).  "To bring a penalty claim before the court, Customs must perfect

its penalty claim in the administrative process according to the procedures that

Congress established in subsection (b) of 19 U.S.C. § 1592."  *United States v. CTS*

*Holding,* LLC, Slip Op. 2015-70, 2015 Ct. Int'l Trade LEXIS 26 at *19 (CIT June 30,

2015) (internal citations and quotations omitted).  The administrative process consists of

a pre-penalty notice and a penalty notice.  19 U.S.C. § 1592(b)(1)–(2).  If Customs has

reasonable cause to believe that there has been fraudulent, grossly negligent or

negligent entry of merchandise into the United States, and determines that further

proceedings are needed, Customs will issue a pre-penalty notice regarding the alleged

violation.  19 U.S.C. § 1592(b)(1)(A).  In the pre-penalty notice, Customs states the

alleged violation, discloses the material facts, identifies the culpability level, estimates

the Government's loss of revenue and proposes a monetary penalty.  *Id*.  The purpose

of the pre-penalty notice is to inform and provide the importer with a reasonable

opportunity to respond before the issuance of a penalty notice.  *See id*.  If an importer

does not pay a perfected penalty notice, Customs' recourse is to file an action with this

Court.

## LEGAL FRAMEWORK

### I.  Default Judgment Under USCIT Rule 55

USCIT Rule 55 governs the circumstances under which the court must enter a default judgment against a party.  Under Rule 55(a), the clerk must enter a party's default "when the party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is demonstrated by affidavit or otherwise."  USCIT R. 55(a).  After an entry of default, Rule 55(b) requires that the moving party file a motion with the court to secure a default judgement.  USCIT R. 55(b).  Further, under Rule 55(b), "[w]hen the plaintiff's claim is for a sum certain or for a sum that can be made certain by computation, the court – on the plaintiff's request with an affidavit showing the amount due – must enter judgment for that amount . . . ."  *Id.*  Rule 55(b) also requires that the court grant costs against a defaulted defendant if the defendant is "neither a minor nor incompetent person."  *Id.*

This Court has established that once a default judgment is entered against a defendant, "all well-pled facts in the complaint are taken as true for purposes of establishing the defendant's liability."  *United States v. Puentes*, 41 CIT__, __, 219 F. Supp. 3d 1352, 1357 (2017) (citations omitted).  The defaulting party's admission of liability for all well-pled facts does not constitute an admission for the amount of damages claimed in the complaint.  *United States v. Rupari Food Servs. Inc.*, 42 CIT __, __, 298 F. Supp. 3d 1347, 1359 (2018).  Accordingly, an entry of default is not sufficient to entitle a plaintiff to relief.  *Puentes*, 219 F. Supp. 3d at 1358.  The court

must determine whether the unchallenged facts establish a violation of Section 1592

and, in turn, warrant a default judgment.  *Id.*

## II.  Remedies and Penalties for Fraud, Gross Negligence and Negligence Under 19 U.S.C. § 1592

Section 1592 states that "no person, by fraud, gross negligence, or negligence

. . . may enter, introduce, or attempt to enter or introduce any merchandise into the

commerce of the United States by means of . . . any document or electronically

transmitted data or information, written or oral statement, or act which is material and

false . . . ."  19 U.S.C. § 1592(a)(1).  This Court has found that a misclassification of

merchandise on Customs' entry documentation establishes a false statement.  *United

States v. Int'l Trading Servs., LLC* 41 CIT __, __, 222 F. Supp. 3d 1325, 1332 (2017).

A statement or an act is material under Section 1592 when "it has the natural

tendency to influence or is capable of influencing agency action including, but not

limited to a Customs action regarding: (1) [d]etermination of the classification,

appraisement, or admissibility of merchandise . . . (2) determination of an importer's

liability for duty . . . ."  19 C.F.R. Pt. 171, App. B(B) (2009).  There are three levels of

culpability — fraud, gross negligence, and negligence — any of which constitutes a

prerequisite for the assessment of a civil penalty under Section 1592.  Section 1592(e)

delineates the burden of proof for establishing each level of culpability and Section

1592(c) states the maximum penalties at each level of culpability for a violation of

Section 1592(a).

### A.  Fraud

Section 1592(e)(2) provides that if the proceeding for the recovery of a monetary penalty is based on fraud, the Government bears the burden of proof to establish the alleged violation by "clear and convincing evidence."  19 U.S.C. § 1592(e)(2).  For the Government to prove a defendant's violation under Section 1592 with a culpability level of fraud, the Government must establish that the defendant "knowingly" committed a customs violation or act in connection therewith.  *United States v. Pan Pac. Textile Group, Inc.*, 29 CIT 1013, 1028, 395 F. Supp. 2d 1244, 1257–58, (2005) (internal citations omitted).  To satisfy this standard, the Government "need not present direct evidence of defendants' knowing participation in the customs violations."  *Id.*  Instead, this Court has consistently found that a plaintiff may meet its burden of proof by circumstantial evidence because "it is seldom that a fraud or conspiracy to cheat can be proved in any other way than by circumstantial evidence."  *Id.* (internal citations omitted in original).  Lastly, a violation of Section 1592(a) under the culpability level of fraud is "punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise."  19 U.S.C. § 1592(c)(1).

### B.  Gross Negligence

Section 1592(e)(3) provides that where the proceeding for the recovery of a monetary penalty is based on gross negligence, the Government bears the burden of proof to establish all elements of the alleged violation.  19 U.S.C. § 1592(e)(3).  An importer's culpability level of gross negligence is established if it is found that the importer "behaved willfully, wantonly, or with reckless disregard in its failure to ascertain

both the relevant facts and the statutory obligation, or acted with an utter lack of care."

*United States v. Ford Motor Co.*, 463 F.3d 1267, 1292 (Fed. Cir. 2006).  *See also Mach.*

*Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 473 (Fed. Cir. 1985) ("The gross negligence

standard has been defined as requiring willful, wanton, or reckless misconduct, or

evidence of utter lack of all care" (internal citation omitted)).  Therefore, the Government

must prove that an act or acts were conducted by a defendant "with actual knowledge of

or wanton disregard for the relevant facts and with indifference to or disregard for the

offender's obligations under the statute."  *United States v. Univar USA Inc.*, 42 CIT __,

__, 355 F. Supp. 3d 1225, 1254 (2018) (internal citations omitted).  Ultimately, a

violation of Section 1592(a) under the culpability level of gross negligence is

"punishable by a civil penalty in an amount not to exceed — (A) the lesser of — (i) the

domestic value of the merchandise, or (ii) four times the lawful duties, taxes, and fees of

which the United States is or may be deprived, or (B) if the violation did not affect the

assessment of duties, 40 percent of the dutiable value of the merchandise."  19 U.S.C.

§ 1592(c)(2).

### C. Negligence

Section 1592(e)(4) instructs that when a proceeding for the recovery of a

monetary penalty is based on negligence, the Government bears the burden of proof to

establish that the defendant's act or omission constitutes the violation.  19 U.S.C. §

1592(e)(4).  The defendant, on the other hand, bears the burden of proof to show that

the act or omission did not occur as a result of negligence.  *Id.*  Therefore, "[o]nce the

government shows materiality and falsity," negligence is established if a defendant does

not carry its burden by failing to argue that the acts or omissions did not occur as a

result of negligence.  *United States v. Chavez*, Slip Op. 2017-140, 2016 Ct. Int'l Trade

LEXIS 26 at *9 (CIT October 10, 2017) (internal citations omitted) (finding that

defendant's failure to appear in the case meant that there was no claim before the court

that defendant exercised "'reasonable care and competence' to ensure the accuracy of

the classifications for the entries at issue").  To meet the reasonable care standard, an

importer or his agent must "review information regarding the nature and classification of

the imported merchandise and information on the underlying transaction, including

review of available documentation, to ensure that the merchandise is properly classified

and assessed with appropriate duties . . . upon entry."  *United States v. Six Star*

*Wholesale, Inc.*, 43 CIT__, __, 359 F. Supp. 3d 1314, 1320 (2019) (citing 19 U.S.C. §

1484(a)(1)).  Finally, a violation of Section 1592(a) under the culpability level of

negligence is "punishable by a civil penalty in an amount not to exceed — (A) the lesser

of — (i) the domestic value of the merchandise, or (ii) two times the lawful duties, taxes,

and fees of which the United States is or may be deprived, or (B) if the violation did not

affect the assessment of duties, 20 percent of the dutiable value of the merchandise."

19 U.S.C. § 1592(c)(3).

## DISCUSSION

Obtaining a default judgment under USCIT Rule 55 is a two-step process when a

party fails to plead or otherwise defend — an entry of default followed by an entry of a

default judgment.  *Six Star,* 359 F. Supp. 3d at 1318.   The Court undertook the first

step, an entry of default, on July 24, 2019, when Cruzin Cooler, LLC and Bad Lama

failed to "otherwise defend" by not having counsel enter appearances on their behalves.

Entry of Default, ECF No. 55.  The court, therefore, turns to the second step.  The court

"will enter a default judgment against [a defendant] if (1) Plaintiff's allegations in its

complaint establish liability [under Section 1592] as a matter of law, and (2) Plaintiff's

claim [for damages] is for a sum certain or for a sum that can be made certain by

computation."  *Six Star*, 359 F. Supp. 3d at 1318 (internal citation omitted).

## I.  Liability

Section 1592 states that "no person, by fraud, gross negligence, or negligence

. . . may enter, introduce, or attempt to enter or introduce any merchandise into the

commerce of the United States by means of . . . any document or electronically

transmitted data or information, written or oral statement, or act which is material and

false."  19 U.S.C. § 1592(a)(1).   Cruzin Cooler, LLC and Bad Lama "entered

merchandise into the commerce of the United States by means of . . . any document or

electronically transmitted data or information, written or oral statement, or act . . . ."

Accordingly, the court must determine (A) whether the information was material and

false, and (B) whether the defaulted defendants acted by fraud, gross negligence, or

negligence.

### A.  Cruzin Cooler, LLC and Bad Lama Supplied Material and False Information to Customs

In the context of Section 1592, a misclassification of merchandise on Customs'

entry documentation establishes a false statement.  *Int'l Trading Servs.*, 222 F. Supp.

3d at 1332.  The Cruzin Cooler, LLC entries and Bad Lama entries are all misclassified

merchandise listed under improper headings; therefore, the information and statements provided by Cruzin Cooler, LLC and Bad Lama to support those classifications were false.  Compl. ¶¶ 7, 13.

Information is material under Section 1592 if it influences or is capable of influencing Customs' classification of merchandise or Customs' determination of an importer's liability for duty.  19 C.F.R. Pt. 171, App. B(B) (2011).[10]  The false information provided by Cruzin Cooler, LLC and Bad Lama was material because it influenced Customs' determination of the defaulted defendants' liability for duties.  Consequently, the entry by Cruzin Cooler, LLC, and Bad Lama of the merchandise under incorrect subheadings denied the Government of revenue that was properly due.  Compl. ¶¶ 22, 25.

### B.  Misstatements from Cruzin Cooler, LLC Were Made with Gross Negligence and Bad Lama's Misstatements Were Made Fraudulently

### 1.  Cruzin Cooler, LLC Acted with Gross Negligence

The Government alleges that Cruzin Cooler, LLC acted with gross negligence, and, in the alternative, negligence.  Compl. ¶ 22.  Gross negligence is established by proving that a defendant acted with "actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute."  *Univar USA Inc.*, 355 F. Supp. 3d at 1254.  The Government argues that Cruzin Cooler, LLC was grossly negligent when, despite having been issued the

---

[10] The relevant subsection of Appendix B to Part 171 has remained substantively unchanged since the 2011 code version.  *Compare* 19 C.F.R. Pt. 171, App. B(B) (2011) *with* 19 C.F.R. Pt. 171, App. B(B) (2020).

Informed Compliance Notice in September 2010, Cruzin Cooler, LLC submitted entries

for parts under a duty-free classification when the correct classification was dutiable.  Pl.

Mot. at 15.

The court agrees.  The Court previously has found, in an action under Section

1592, that a plaintiff met its burden for proving that defendant's level of culpability

constituted gross negligence by showing that after being alerted to misclassifications by

Customs, the defendant continued to make additional entries using the incorrect

classification.  *See United States v. Sterling Footwear, Inc.*, 41 CIT __, __, 279 F. Supp.

3d 1113, 1139 (2017) ("[Defendant] failed to correct its errors when pointed out by CBP

and, instead, continued to make entries using the incorrect classification.  Plaintiff has

demonstrated [defendant]'s gross negligence by a preponderance of the evidence").

The Cruzin Cooler, LLC entries were imported after Cruzin Cooler, LLC received the

initial Informed Compliance Notice notifying it that the parts should be imported under

subheading 3923.10.0000 with a 3 percent duty-rate, and subheading 8714.99.8000

with a 10 percent duty-rate, instead of a duty-free rate.  Compl. ¶ 5.  In a similar fashion,

in February 2011, Cruzin Cooler, LLC classified entry 53102683371 under a duty-free

heading, notwithstanding that in January 2011, Customs had sent its second Informed

Compliance Notice to Cruzin Cooler, LLC making clear the marking and classification

issues with Cruzin Cooler's importations.  Compl. ¶ 10.

### 2.  Bad Lama Acted Fraudulently

The Government alleges that Bad Lama acted fraudulently when importing the

Bad Lama entries.  The Government argues that Bad Lama's fraudulent acts are

evidenced by "Bad Lama's failure to act in accordance with the September 2010 and

January 2011 Informed Compliance Notices, Binding Ruling N151635, the additional

guidance given by [Customs] to Mr. Beal, as well as the formation of Bad Lama for the

purpose of avoiding [Customs'] scrutiny." Pl. Mot. at 14.  The culpability level of fraud

requires that the Government establish the alleged violation by clear and convincing

evidence.  19 U.S.C. § 1592(e)(2).  Therefore, the question that must be addressed,

when all reasonable inferences are drawn in favor of Customs, is whether there is

sufficient circumstantial evidence for a reasonable trier of fact to infer defendant's

knowing participation in the customs violations at issue.  *Pan Pac. Textile Group, Inc.*,

295 F. Supp. 2d at 1258.

     The court finds that the answer to this inquiry is yes.  There is sufficient evidence

for a reasonable trier of fact to infer that Bad Lama knowingly participated in the

customs violations.  The majority of the Government's proffered evidence for a

fraudulent culpability level relies in large part on connecting Bad Lama to Cruzin Cooler,

LLC and CSUSA.  A discussion of successor liability in a Section 1592 analysis is useful

in identifying a knowing relationship between Bad Lama and both Cruzin Cooler, LLC

and CSUSA, notwithstanding that the case at hand is not one of successor liability.[11]

The Court in *United States v. CTS Holding, LLC* found that, in the customs context, a

---

[11] This Court has held that corporate successors may be held liable for their
predecessors' liabilities in Section 1592 actions.  *United States v. CTS Holding, LLC*,
Slip Op.  2015-70, 2015 Ct. Int'l Trade LEXIS 71 at *28 (CIT June 30, 2015).  The Court
in *CTS Holding*, stated that a corporate successor is responsible for its predecessor's
debts if the successor is a "mere continuation of its predecessor."  *Id.* at *33 (internal
citations omitted).

continuation could be evidenced by companies having the same registered agent,

sharing at least one officer, having the same address and engaging in the same import

activity.  Slip Op. 2015-70, 2015 Ct. Int'l Trade LEXIS 71 at *34 (CIT June 30, 2015)

(citing *Bud Antle, Inc. v. E. Foods, Inc.*, 758 F.2d 1451, 1458-59 (11th Cir. 1985)).

First, Bad Lama was related at all relevant times to Cruzin Cooler, LLC and

CSUSA through Mr. Beal.  Mr. Beal was the owner of all three companies and the

registered agent for both Bad Lama and Cruzin Cooler, LLC.  Compl. ¶¶ 3, 10.  Bad

Lama and Cruzin Cooler, LLC had the same address.  Compl. ¶ 3.  Bad Lama and

Cruzin Cooler, LLC sold the same Cruzin Cooler parts and CSUSA sold similar Cruzin

Cooler devices.  Compl. ¶ 10.

The court deems that it is reasonable to find that Bad Lama knew of the two

Informed Compliance Notices that Cruzin Cooler, LLC received and the Binding Ruling

N151635 issued to CSUSA.  Mr. Beal, representing Cruzin Cooler, LLC, met with

Customs officials and was told in person that the classification of certain parts under the

duty-free heading was improper.  Compl. ¶¶ 5, 10.  Mr. Beal was on notice that the

classification of certain parts was improper, and yet, he knowingly continued to

misclassify the parts after he formed his new company, Bad Lama.  In fact, there is

evidence in the well-pled complaint to indicate that Mr. Beal created Bad Lama precisely

because of the attention Cruzin Cooler, LLC received from Customs.  Compl. ¶ 12.  As

stated above, Mr. Beal revealed to Customs, employees of Cruzin Cooler, LLC, and one

of his customs brokers that Mr. Beal created Bad Lama to avoid scrutiny by Customs.

*Id.*  Additionally, Bad Lama entries UPS54173946 and UPS84687215 were invoiced in

direct violation of Binding Ruling N151635.  Compl. ¶ 15.  A reasonable trier of fact

could find that Bad Lama knowingly violated the two Informed Compliance Notices and

Binding Ruling N151635.

Additionally, the Bad Lama entries revealed false statements on the Customs

7501 forms.  Compl. ¶ 19.  Bad Lama stated that it was "not related" to the company

that manufactured the goods.  *Id.*  However, there is evidence in the record that

contradicts Bad Lama's assertion.  The evidence shows that Mr. Beal had an ownership

interest in the manufacturing company and that an employee of Bad Lama was also on

the payroll of the manufacturing company.  *Id.*  Mr. Beal, as the owner and agent who

"handled all customs related business on behalf of Bad Lama" would have known of his

ownership interest in the manufacturing company.  Compl. ¶ 11.  Mr. Beal would also

have had knowledge of the merchandise he was importing.

## II.  Damages

### A.  Assessing the Fourteen Factors to Determine Civil Penalty

Section 1592(e)(1) dictates that the court decide the amount of the civil penalty

*de novo*.  *Ford Motor Co.*, 463 F.3d at 1341.  In a Section 1592 action, "[t]he court

ordinarily considers fourteen non-exclusive factors to determine the appropriate penalty

amount."[12]  *United States v. Deladiep, Inc.*, 41 CIT __, __, 255 F. Supp. 3d 1326, 1341

---

[12] The fourteen factors referenced in *Deladiep* were identified in *United States v. Complex Machine Works Co*. and include the following: (1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the

(2017).  However, Cruzin Cooler, LLC and Bad Lama have failed to appear, which

leaves the court with an incomplete record to assess the fourteen factors.  *See id.*

Where there is an incomplete record, this Court has applied "differing approaches in

determining the amount of the penalty" and has not always applied the *Complex Mach.*

*Works Co.* factors.  *United States v. Horizon Prods. Int'l. Inc.*, 41 CIT __, __, 229 F.

Supp. 3d 1370, 1379 (2017).  In *Horizon Prods. Int'l. Inc.*, the Court determined that it

was appropriate to "weigh[ ] any applicable mitigating or aggravating considerations"

because "[a] modest, but not a full, record exists, upon which the court may rely in

determining the appropriate penalty."  *Id*.  *See also Deladiep*, 255 F. Supp. 3d at 1341

("When a defendant fails to appear, the court will determine the appropriate penalty

amount in light of the totality of the evidence, weighing mitigating circumstances that

support a lower penalty and aggravating circumstances that support a higher penalty.")

Additionally, when the court analyzes the amount of penalties for Cruzin Cooler, LLC

and Bad Lama, "[t]he court will not presume that the statutory maximum is the starting

point . . . ."  *Six Star*, 359 F. Supp. 3d at 1320.  The court now turns to the weighing of

any mitigating or aggravating circumstances.

---

violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the
appropriateness of the size of the penalty to the defendant's business and the effect of a
penalty on the defendant's ability to continue doing business; (9) that the penalty not
otherwise be shocking to the conscious of the court; (10) the economic benefit gained
by the defendant through the violation; (11) the degree of harm to the public; (12) the
value of vindicating the agency authority; (13) whether the party sought to be protected
by the statute had been adequately compensated for the harm; and (14) such other
matters as justice may require.  *See United States v. Complex Machine Works Co.*, 23
CIT 942, 949-50, 83 F. Supp. 2d 1307, 1315 (1999).

### 1.  Defendant's Character: Good Faith Effort to Comply, Degree of Culpability, and History of Prior Violations

Cruzin Cooler, LLC did not show a good faith effort to comply with the statute when it disregarded Customs' September 2010 Informed Compliance Notice, leading this court to determine the culpability level to be gross negligence for Cruzin Cooler, LLC.  Pl. Mot. at 17.  Bad Lama did not show a good faith effort to comply with the statute as Bad Lama was formed by Cruzin Cooler, LLC to avoid its obligations under the statute.  Compl. ¶ 12.  The creation of Bad Lama in this context contributes further to a lack of good faith by Cruzin Cooler, LLC.  *Id*.  Thus, Bad Lama's culpability is at the highest level — fraud.  Compl. ¶ 25.  Further, Mr. Beal, Bad Lama's owner, had a history of previous violations, and when Customs sought to address these violations, he created Bad Lama in an attempt to continue the violations without having to face scrutiny.  Compl. ¶ 12.

### 2.  Seriousness of Offense: Public Interest in Compliance, Nature and Circumstances of Violation, and Gravity of Violation

The public has a great interest in ensuring the "truthful and accurate submission of documentation to Customs and the full and timely payment of duties required on imported merchandise."  *United States v. Complex Mach. Works Co.*, 23 CIT 942, 952, 83 F. Supp. 2d 1307, 1317 (1999).  The nature and circumstances also imply that heavy penalties are warranted as there was a continuing failure to comply with Customs' Informed Compliance Notices.  Compl. ¶ 12.  The gravity of the violations in the instant case is high also because this was "not an isolated occurrence, but [rather] presents a pattern of gross disregard for and evasion of the Customs laws of the United States."

*United States v. New-Form Mfg. Co.*, 27 CIT 905, 922, 277 F. Supp. 2d 1313, 1329

(citing *Complex Mach. Works Co.*, 83 F. Supp. 2d at 1317–18).

> **3.  Practical Effect of Penalty: Defendant's Ability to Pay,
>       Size of Penalty in Relation to Defendant's Business and Effect
>       on Ability to Continue Doing Business, and Whether Penalty
>       Shocks the Conscience**

Due to a failure to defend by both Cruzin Cooler, LLC and Bad Lama, the court

lacks information as to the defaulted defendants' ability to pay and as to the effect of the

penalty on defaulted defendant's ability to continue to do business.  Compl. ¶ 24.

Nevertheless, the loss of revenue to the Government was $3,583.16 from Cruzin

Cooler, LLC and $16,030.11 from Bad Lama.  Compl. ¶ 22.  In total, the civil penalty

amount sought in the Government's well-pled complaint of $14,332.64 from Cruzin

Cooler, LLC and $852,088.45 from Bad Lama is undoubtedly a large sum of money;

however, application in this case of the statutory penalty range is not shocking to the

conscience of the court given the blatant and intentional disregard for and violation of

U.S. law.  *Complex Mach. Works Co.*, 83 F. Supp. 2d at 1319.

> **4.  Public Policy Concerns: Degree of Harm to Public, Value of
>       Vindicating Agency Authority, and Whether Damaged Party Has
>       Been Compensated for Harm**

A review of the factors supports a substantial penalty and does not reveal

mitigating factors for Cruzin Cooler, LLC and Bad Lama.  Here, public policy was

significantly harmed.  Customs was "forced to conduct a multi-year investigation and

litigation seeking to recoup the penalties."  Pl. Mot at 18 citing *New-Form Mfg. Co.,* 277

F. Supp.2d at 1331.  Customs also spent much time and energy sending Informed

Compliance Notices and even met with Mr. Beal and his attorney in person to ensure

compliance with U.S. import laws.  *See Six Star*, 359 F. Supp. 3d at 1322 (the court

noted public policy considerations, which include "leaving Customs to expend resources

to seek and obtain some payment from secondary parties").  As it stands, neither Cruzin

Cooler, LLC nor Bad Lama has made any payment.  Pl. Mot at 5–6.

### B.  Cruzin Cooler, LLC and Bad Lama Are Liable for the Maximum Civil Penalties

Section 1592 provides a maximum civil penalty amount for grossly negligent

violations that affect the assessment of duties as the lesser of the domestic value of the

merchandise or four times the lawful duties, taxes, and fees of which the United States

is deprived.  19 U.S.C. § 1592(c)(2).  Section 1592 also provides that the maximum civil

penalty amount for fraudulent violations is the domestic value of the merchandise.  19

U.S.C. § 1592(c)(1).  The Government alleges four primary reasons that Cruzin Cooler,

LLC and Bad Lama are liable for the maximum civil penalties of $14,332.64 and

$852,088.45, respectively: (1) a high degree of culpability; (2) public interest reasons

such as inaccurate submission of documentation to Customs; (3) failure to pay required

duties in a full and timely manner; and, (4) the importance of vindicating Customs'

authority.  Pl. Mot. at 17-18.  As discussed above in II.A, a review of the mitigating and

aggravating circumstances does not make a case for a lesser civil penalty for Cruzin

Cooler, LLC or Bad Lama.  *Complex Mach. Works Co.*, 83 F. Supp. 2d at 1316.  As

such, the court finds appropriate and grants the Government the maximum civil

penalties for grossly negligent violations by Cruzin Cooler, LLC and for fraudulent

violations by Bad Lama under Section 1592.

### C.  The Government Is Also Entitled to Post-Judgment Interest and Costs

The Government may be awarded post-judgment interest in a civil case on the

penalty amounts established in 28 U.S.C. § 1961.  Additionally, Rule 55(b) requires that

the court, when awarding a judgment to a plaintiff in a default case, also "enter costs

against a defendant who has been defaulted for not appearing and who is neither a

minor nor an incompetent person."  USCIT R. 55(b).  *See Deladiep*, 255 F. Supp. 3d at

1336.  Therefore, the court awards the Government post-judgment interest pursuant to

28 U.S.C. § 1961, and costs.

### CONCLUSION

In 1980, Herb Brooks coached the United States Men's Olympic hockey team to

one of the most stunning upset victories in sports history in a feat that became known

as the "Miracle on Ice."  On the evening of February 20, 1980, in Lake Placid, New

York, in an arena that now bears his name, Coach Brooks spoke to his team,

challenged and motivated the players as never before, as they prepared to take to the

ice to take on — and beat — the odds-on favorite, four-time defending, Gold Medal

champion Soviet team:

> Great moments are born from great opportunity, and that's what you have
> here tonight, boys. That's what you've earned here tonight.  One game; if
> we played them ten times, they might win nine. But not this game, not
> tonight.  Tonight, we skate with them.  Tonight we stay with them, and we

shut them down because we can.  Tonight, we are the greatest hockey team in the world.[13]

Success in litigation, especially within the area of international trade and customs, is far from certain and rests always on the correct application of the pertinent law to the facts presented.  Regardless of what the odds may be, all favorable outcomes begin with a defense.

* * *

In the instant case, Cruzin Cooler, LLC and Bad Lama failed to "otherwise defend," and as such were found by this Court to be in default.  Now, for the reasons set forth above, the court enters a default judgment against the defaulted defendants Cruzin Cooler, LLC and Bad Lama for the amounts of $14,332.64 and $852,088.45, respectively, plus post-judgment interests and costs.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated: July 9, 2020
          New York, New York

---

[13] Coach Herb Brooks, Pregame Speech to Team USA Men's Hockey, 1980 Winter Olympic Games, Lake Placid, New York (Feb. 20, 1980).